## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **SHOPIFY INC.**, a Corporation organized under the laws of Canada, | ) ) ) | |
| Plaintiff, | ) ) | **Case No. 1:24-cv-03691** |
| v. | ) ) | |
| **SHOPLINE TECHNOLOGY HOLDINGS PTE. LTD.**, a private limited company organized under the laws of Singapore, **SHOPLINE US, INC.**, a Delaware corporation, and **SINOXPRESS INC. d/b/a fosterry.com**, a New York corporation, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## SHOPIFY INC.'S OPPOSITION TO
## SHOPLINE US, INC.'S MOTION TO DISMISS

# <u>TABLE OF CONTENTS</u>

<div align="right"><u>Page</u></div>

INTRODUCTION ................................................................................................... 1

FACTUAL BACKGROUND ................................................................................. 3

    A.    Shopify Is An Industry-Leading E-Commerce Service Provider And Has Registered Copyrights In The "Dawn" Theme ...................................... 3

    B.    Shopline Made An Identical Copy Of Shopify's Dawn Theme To Develop Its Infringing Seed Knockoffs ................................................................ 4

ARGUMENT .......................................................................................................... 8

I.    SHOPIFY HAS AMPLY ALLEGED COPYRIGHT INFRINGEMENT BASED ON SHOPLINE'S VERBATIM REPRODUCTION OF DAWN ..................... 8

II.    SHOPIFY HAS AMPLY ALLEGED COPYRIGHT INFRINGEMENT BASED ON SHOPLINE'S CREATION AND ONGOING DISTRIBUTION OF THE INFRINGING SEED DERIVATIVE .............................................................. 14

    A.    Shopify Pleads That Shopline Actually Copied Dawn ........................ 15

    B.    Shopify Pleads That Seed Is Substantially Similar to Dawn ............... 16

CONCLUSION .................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*4DD Holdings, LLC v. United States*,
    169 Fed. Cl. 164 (2023) ...................................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................11

*Atari Games Corp. v. Nintendo of Am. Inc.*,
    975 F.2d 832 (Fed. Cir. 1992).........................................9

*Blagman v. Apple Inc.*,
    2013 WL 2181709 (S.D.N.Y. May 20, 2013) .................8, 11, 13, 17

*BWP Media USA, Inc. v. Gossip Cop Media, Inc.*,
    196 F. Supp. 3d 395 (S.D.N.Y. 2016)............................10

*Christian v. Mattel, Inc.*,
    286 F.3d 1118 (9th Cir. 2002) ........................................14

*Eckes v. Card Prices Update*,
    736 F.2d 859 (2d Cir. 1984).............................................16

*Elatab v. Hesperios, Inc.*,
    2021 WL 2226877 (S.D.N.Y. June 2, 2021) ..................15, 16

*Ellis v. Jean*,
    2011 WL 6368555 (S.D.N.Y. Dec. 16, 2011) .................19

*Fonar Corp. v. Domenick*,
    105 F.3d 99 (2d Cir. 1997)..............................................10

*Hoehling v. Universal City Studios, Inc.*,
    618 F.2d 972 (2d Cir. 1980).............................................2, 9

*IBM Corp. v. Micro Focus (US), Inc.*,
    676 F. Supp. 3d 263 (S.D.N.Y. 2023)............................9, 13, 15, 18

*ID Tech LLC v. Toggle Web Media LLC*,
    2023 WL 2613625 (E.D.N.Y. Mar. 23, 2023) ................13

*Jamison Bus. Sys., Inc. v. Unique Software Support Corp.*,
    2005 WL 1262095 (E.D.N.Y. May 26, 2005) ................16

*Jorgensen v. Epic/Sony Records*,
    351 F.3d 46 (2d Cir. 2003)........................................................................15

*Klauber Bros., Inc. v. Jenny Yoo Collection, Inc.*,
    2017 WL 4082483 (S.D.N.Y. July 18, 2017) ....................................................13

*Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*,
    71 F.3d 996 (2d Cir. 1995).......................................................................15

*Lilith Games (Shanghai) Co. v. UCool, Inc.*,
    2015 WL 5591612 (N.D. Cal. Sept. 23, 2015) ...................................................14

*Live Face on Web, LLC v. Biblio Holdings LLC*,
    2016 WL 4766344 (S.D.N.Y. Sept. 13, 2016)....................................................18

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015)......................................................................23

*Lumetrics Inc v. Blalock*,
    23 F. Supp. 3d 138 (W.D.N.Y. 2014) ...........................................................14

*M. Kramer Mfg. Co., Inc. v. Andrews*,
    783 F.2d 421 (4th Cir. 1986) ....................................................................16

*McRoberts Software, Inc. v. Media 100, Inc.*,
    329 F.3d 557 (7th Cir. 2003) ...................................................................14

*Media.net Advert. FZ-LLC v. NetSeer, Inc.*,
    156 F. Supp. 3d 1052 (N.D. Cal. 2016) .................................................. *passim*

*Mitchell v. Dyer*,
    2010 WL 11601036 (C.D. Cal. Aug. 12, 2010)....................................................9

*OMG Accessories LLC v. Mystic Apparel LLC*,
    2021 WL 1167528 (S.D.N.Y. Mar. 25, 2021) ...........................................17, 19

*Paul Rudolph Foundation v. Paul Rudolph Heritage Foundation*,
    2022 WL 4109723 (S.D.N.Y. Mar. 20, 2024) ..................................................13

*Radji v. Khakbaz*,
    607 F. Supp. 1296 (D.D.C. 1985), *amended*,
    1987 WL 11415 (D.D.C. May 15, 1987).........................................................17

*Reinicke v. Creative Empire, LLC*,
    2013 WL 275900 (S.D. Cal. Jan. 24, 2013)......................................................20

*Rogers v. Koons*,
    960 F.2d 301 (2d Cir. 1992)......................................................................15

*Scholz Design, Inc. v. Sard Custom Homes, LLC*,
    691 F.3d 182 (2d Cir. 2012)..................................................................................8

*Software For Moving, Inc. v. Frid*,
    2010 WL 2143670 (S.D.N.Y. May 27, 2010) ..................................................18

*Tianhai Lace USA, Inc. v. David's Bridal LLC*,
    2022 WL 4111170 (S.D.N.Y. Sept. 8, 2022)..................................................19

*Yeda Rsch. & Dev. Co. Ltd. v. iCAD, Inc.*,
    2019 WL 4562409 (S.D.N.Y. Sept. 5, 2019)..................................................18

## STATUTES

17 U.S.C. § 101.......................................................................................................14

17 U.S.C. § 102(1)....................................................................................................4

17 U.S.C. § 106.........................................................................................................7

17 U.S.C. § 410(c).....................................................................................................9

## RULES

Fed. R. Civ. P. 8...................................................................................................2, 17

Fed. R. Civ. P. 11.................................................................................................12, 14

Fed. R. Civ. P. 56...................................................................................................10

## MISCELLANEOUS

Compendium of U.S. Copyright Office Practices ........................................................4

## INTRODUCTION

This case arises from some of the most brazen and obvious acts of copyright infringement likely to come before the Court.  Defendant Shopline US, Inc. ("Shopline") and its parent Shopline Technology made unauthorized, verbatim copies of Shopify Inc.'s copyrighted "Dawn" theme to create infringing "Seed" knockoffs that they are distributing in direct competition with Shopify. Rather than acknowledge and redress this misconduct—or even deny it—Shopline tries to escape the consequences of its actions through misdirection.  Shopline starts down the wrong path in its motion to dismiss (ECF No. 40, the "Motion" or "Mot.") by urging the Court to decide whether the examples and evidence of copying Shopify highlighted in its Complaint establish that Seed's HTML code is substantially similar to Dawn's.  First, that is not a proper or relevant question at this pleading stage.  And second, it simply ignores Shopify's central allegation: that to "create Seed, Shopline started by making an unauthorized copy of" Dawn's code *in its entirety*—including all of the markup code (or HTML) protected by Shopify's copyright registrations—and then tried to cover up its infringement by "translat[ing] that unauthorized copy into a different programming language" and making "largely cosmetic changes."  Compl. ¶ 24.  Shopline's original, illicit copy was not merely substantially similar to Dawn's code.  It ***was*** Dawn's code.

The Complaint identifies telltale proof of Shopline's slavish copying; proof that would not exist if Shopline independently created a rival theme.  Shopline misses the point, perhaps intentionally, by fixating on the fact that some of these fingerprints of copying may not themselves be protected by Shopify's copyright registrations (*e.g.*, the "look and feel" of websites generated by the HTML code or words like "Dawn" and "Shopify" that appear on Shopline webpages where they have no business being).  Shopify is well aware of the scope of its copyright registrations and is not suing over the output of its markup code, or because of Shopline's inclusion of specific words in its code.  Shopify offers those (and other) examples in its Complaint because they

powerfully prove Shopify's charge that Shopline copied Dawn in full.  There is no other plausible explanation, and Shopline does not offer any.  Shopline's arguments show it has "los[t] sight of the forest for the trees"; its "verbatim reproduction of [Shopify's] work, of course, … is actionable as copyright infringement."  *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 979-80 (2d Cir. 1980).

But that is not all.  The purpose of Shopline's duplication of Dawn was the creation of its Seed theme, an infringing derivative of Dawn that retains large swaths of Dawn's protectable HTML code.  It is as to this *additional* infringement that the Court may ask whether Shopify has plausibly alleged substantial similarity.  And Shopify's Complaint forcefully answers that question in the affirmative by alleging, *inter alia*, that Seed's code still contains the "perfect reproduction" of "over one thousand lines" of Dawn's copyrighted code and by identifying specific examples of near-identical HTML in the two works.  Compl. ¶¶ 23-33.  Shopify's allegations of substantial similarity easily state an infringement claim under Rule 8, which does not require the particularized, line-by-line pleading that Shopline invents for "the HTML context."  And now that Shopline has asked the Court to judicially notice versions of both Dawn and Seed, a host of other similarities in the markup code are manifest.  Exhibits A and B hereto show additional side-by-side comparisons of the HTML code from the two themes, further establishing Shopline's ongoing infringement.  But even with this overwhelming evidence of copying, now is not the time for a summary adjudication on the question of substantial similarity.  Shopify's allegations are more than sufficient.  Shopline's Motion must be denied.

## FACTUAL BACKGROUND

**A.     Shopify Is An Industry-Leading E-Commerce Service Provider And Has Registered Copyrights In The "Dawn" Theme.**

Shopify is a popular e-commerce service provider headquartered in Ottawa, Canada. Compl. ¶¶ 1, 7.  Its service allows millions of merchants around the globe to design and operate online stores and receive backend support for everything from inventory management to payments and shipping.  *Id.* ¶ 1.  Central to Shopify's success is its "Dawn" computer theme, which Shopify merchants use to quickly design appealing digital storefronts on the platform.  *Id.* ¶ 2.  Shopify employees spent countless hours developing the code that makes up Dawn.  *Id.*  Shopify published the first version of Dawn, Version 1.0.0, on its theme store in June 2021.  *Id.* ¶ 19.  Subsequent versions of Dawn—Version 7.0.0 and Version 13.0.0—were published in September 2022 and January 2024, respectively.  *Id.*  Each successive version of Dawn builds upon the prior and contains much of the same code.  *See generally* ECF No. 41 (Shopline's Request for Judicial Notice), Exs. D-F (deposit copies of Dawn's code).  Dawn's code has remained publicly available for use on Shopify's platform since its publication.  Compl. ¶ 20.  The United States Copyright Office granted Shopify's registrations in the three versions of Dawn in April 2024.  ECF No. 41, Exs. G-I.  Shopify's certificates of copyright registration are identified by number and incorporated into the Complaint.  *Id.*

In granting Shopify's registrations, the Copyright Office recognized that each version of Dawn contains substantial amounts of original, expressive, and copyrightable code authored by Shopify's employees.  *See generally id.*, Exs. A-C, G-J.  Shopify's registration for Version 1.0.0 covers "HTML and source code," and its registrations for Version 7.0.0 and Version 13.0.0 cover "markup code."  *Id.*, Exs. G-J.  "Source code is a set of statements and instructions written by a human being using a particular programming language," and is "used in a computer to bring about

a certain result." U.S. Copyright Office, Compendium of U.S. Copyright Office Practices §§ 618.4(C), 721.3 (3d ed. 2021) ("Compendium"). HTML, or hypertext markup language, is a form of markup code. *Id.* § 1006.1(A). Markup code "establishes the format and layout of text and graphics when a user views a website by instructing the user's browser to present material in a specified manner." *Id.* § 1002.4. Markup code that is "created by a human being" and "contains a sufficient amount of creative expression" constitutes a "literary work" protected by the Copyright Act. *Id.* § 1006.1(A); 17 U.S.C. § 102(1); *see also Media.net Advert. FZ-LLC v. NetSeer, Inc.*, 156 F. Supp. 3d 1052, 1065 (N.D. Cal. 2016) (discussing creativity and copyrightability of human-authored HTML code).[1] Dawn's markup code, created by Shopify's employees, helps to generate the appearance of the merchant websites created using the Dawn theme. Compl. ¶¶ 2, 17.

### B. Shopline Made An Identical Copy Of Shopify's Dawn Theme To Develop Its Infringing Seed Knockoffs.

Shopline operates its own e-commerce service with co-defendant Shopline Technology Holdings Pte. Ltd., its Singapore-based parent company. *Id.* ¶¶ 3, 8-10. Shopline operates as a would-be competitor to Shopify and has expanded its reach to the U.S., where it distributes the "Seed" theme that many Shopline merchants, like New York-based Defendant Fosterry, use to create storefronts on Shopline's platform. *Id.* ¶¶ 3, 11, 13, 42-43. "Seed serves as the foundation for all free Shopline themes," including a host of modified versions, that Shopline distributes to its merchants. *Id.* ¶¶ 21, 32, 41.

---

[1] A registration for HTML or markup code "cover[s] the HTML itself"; *i.e.*, the individual lines of written code are themselves protectable expression (just like the expressive sentences in a novel). Compendium § 721.10(A). Such registrations generally "do[] not cover any of the content that may appear on the website" as a result of the code, or "the formatting and layout of text or digital files on a webpage that may be dictated by the HTML." *Id.* §§ 721.10(A); 1006.1(A).

But Seed, and the other Shopline themes built on top of it, are not the product of Shopline's own hard work and creativity. They are the product of Shopline's unlawful reproduction of the entirety of Shopify's publicly available Dawn code. Shopify avers that "[t]o create Seed, Shopline started by making an unauthorized copy of Dawn, translated that unauthorized copy into a different programming language, and then made largely cosmetic changes to the Dawn code." *Id.* ¶ 24. Shopify's allegation of verbatim copying is echoed throughout the Complaint. *See, e.g.*, *id.* ¶ 39 ("To create its infringing Seed theme, Shopline duplicated Shopify's Dawn theme"); *id.* ¶ 4 (describing "Shopline's wholesale copying"); *id.* ¶ 5 (Shopline infringed by "copying, modifying and distributing its Dawn knock-off").

Seed's code still contains "overwhelming" evidence of Shopline's verbatim reproduction, reflected "[f]rom the highest level of [Seed's] overarching organization to the smallest level of [its] individual lines of code." *Id.* ¶ 25. As Shopify alleges, the "organization of Seed's directory layout"—*i.e.*, the organization and structure of the files and folders that store Seed's code—are "exactly the same" as Dawn's at both the first- and second-level of the directories. *Id.* ¶¶ 25-26. "Roughly half of the file names used in Seed" are also "exactly the same" as Dawn's. *Id.* ¶ 26. Seed's files also have "the same technical design and properties as Dawn," and the "same internal naming conventions and ordering of coding elements." *Id.* ¶ 27.[2] As Shopify alleges, because of

---

[2] These commonalities are evident in the publicly available GitHub versions of Dawn's and Seed's code that Shopline asks this Court to examine. *See* Mot. at nn.3-4, 7. *Compare* https://github.com/Shopify/dawn *with* https://github.com/shoplinedev/Seed (matching first-level directory folders); https://github.com/Shopify/dawn/tree/v7.0.0/templates *with* https://github.com/shoplinedev/Seed/tree/2c1a5cc07b0f31d99cbcac1440885eeaecf72ae7/templates (second-level directory subfolder and file names); https://github.com/Shopify/dawn/blob/v7.0.0/snippets/pagination.liquid *with* https://github.com/shoplinedev/Seed/blob/2c1a5cc07b0f31d99cbcac1440885eeaecf72ae7/snippets/pagination.html (file contents and non-functional developer comments); https://github.com/Shopify/dawn/blob/v7.0.0/snippets/facets.liquid *with* https://github.com/shoplinedev/Seed/blob/2c1a5cc07b0f31d99cbcac1440885eeaecf72ae7/snippet

(continued...)

Shopline's wholesale copying, "the appearance of [the] stores that Seed generates is often indistinguishable from the ones Dawn generates." *Id.* ¶ 29. Further, the phrase "dawn-test" and numerous references to "Dawn" appeared on a website that Shopline operated to test the copied code for Seed (which was taken down immediately after Shopify sued). *Id.* ¶ 33. All of this is highly compelling evidence of Shopline's copying of the Dawn code.

Shopify further alleges that in a token effort to conceal its infringement, Shopline translated its duplicate copy of Dawn's code into a different programming language and then made minor, cosmetic changes to the code. *Id.* ¶¶ 24, 28. Even still, the Seed code retains the "perfect reproduction" of "over one thousand lines and one-hundred thousand characters" of Dawn's copyrightable markup code that determine the appearance of particular icons on Dawn-generated websites (*e.g.*, the image of a price tag). *Id.* ¶ 27.[3] Another "example of Shopline's code copying is in Seed's section for 'product media' and the 'srcset' function," which were taken directly from Dawn. *Id.* ¶ 28. "Srcset" tells the browser to adjust images in response to the particular device a user is using. There are many ways Shopline could have written those individual lines of code, but it chose to use Dawn's code instead, down to Dawn's specific, original values for the widths of images to display. *Id.* The Complaint identifies six lines of Seed's HTML code that are near-identical to Dawn's, even after translation, making clear that these are just the tip of the iceberg.

---

s/facets.html (internal file class names and structure);
https://github.com/Shopify/dawn/blob/v7.0.0/assets/product-modal.js *with*
https://github.com/shoplinedev/Seed/blob/2c1a5cc07b0f31d99cbcac1440885eeaecf72ae7/assets/
component-product-modal.js (internal order and organization).

[3] The identically copied code used to generate those icons is also viewable in the GitHub versions of Dawn's and Seed's code. *Compare*
https://github.com/Shopify/dawn/blob/d9d02dd0e28b385957c6543b45594dd4669ad29e/snippets/icon-accordion.liquid *with*
https://github.com/shoplinedev/Seed/blob/2c1a5cc07b0f31d99cbcac1440885eeaecf72ae7/snippets/icon-accordion.html (showing identically replicated code for forty-two of forty-three icons).

*Id.* ¶ 28.[4]  The publicly available GitHub versions of Dawn's and Seed's code reflect many other instances of Seed's retention of near-identical lines of Dawn's protectable markup code.  Exhibits A and B hereto identify several more examples (with the red text in each exhibit denoting the many identical or near-identical lines of code).

Shopline's copying of Dawn was part of a broader scheme to steal whatever it could from Shopify.  *Id.* ¶¶ 3, 5, 23, 34-36, 40.  As but one example (and there are many), the Complaint cites Shopline's duplication of Shopify's developer pages, which serve as manuals for merchants designing their own storefronts.  *Id.* ¶¶ 34-36 (chart comparing near-identical developer pages).  As Shopify put it, "Shopline had and has no interest in respecting Shopify's rights and, in an effort to make itself appear as a legitimate service, is willing to engage in the wholesale appropriation of Shopify's proprietary content."  *Id.* ¶ 36.

Shopify charges Shopline with infringement based not only on the verbatim reproduction of Dawn's code, but also on the subsequent creation of the infringing Seed derivative, and Shopline's ongoing distribution of Seed and its progeny throughout the country.  *Id.* ¶¶ 5-6, 46-49; *see* 17 U.S.C. §§ 106 (1)-(3), (5).  Shopify further alleges that Shopline is contributorily liable for the infringement committed by its many merchants, including defendant Fosterry, who use the infringing Seed theme to power their storefronts on Shopline's platform.  Compl. ¶¶ 6, 13.

---

[4] Shopline's translation of Dawn's code into a different programming language is reflected in the first row of the chart included in paragraph 28 of the Complaint.  The file extension ".liquid" in the Dawn column refers to the "Liquid" templating language created and used by Shopify.  *See* https://shopify.github.io/liquid/.  The file extension ".html" in the Seed column indicates the "Handlebars" templating language used by Shopline.  *See* https://developer.shopline.com/docsv2/ec20/hgr7vj9rpaah1a6m/n37zruz5pcban9fa.

## ARGUMENT

**I.    SHOPIFY HAS AMPLY ALLEGED COPYRIGHT INFRINGEMENT BASED ON SHOPLINE'S VERBATIM REPRODUCTION OF DAWN.**

"A properly pleaded copyright infringement claim alleges (1) which specific original works are the subject of the copyright claim, (2) that plaintiff owns the copyrights in those works, (3) that the copyrights have been registered in accordance with the statute, and (4) by what acts during what time the defendant infringed the copyright."  *Blagman v. Apple Inc*., 2013 WL 2181709, at *2 (S.D.N.Y. May 20, 2013) (Carter, J.).  "Although a plaintiff must describe the acts constituting copyright infringement with 'some specificity,' copyright claims are not subject to 'particularity in pleading.'"  *Id.* at *3 (quotation and citations omitted).

Here, Shopify has easily met the required elements by alleging that Shopline created an identical copy of the entirety of Dawn's publicly available code, including every portion protected by Shopify's registrations, to create its infringing Seed theme.  Specifically as to each prong, the Complaint alleges: (1) that Versions 1.0.0, 7.0.0, and 13.0.0 of Dawn are the subject of Shopify's copyright infringement claims (Compl. ¶¶ 2, 19, 23-34); (2)-(3) that Shopify is the registered owner and author of the copyrighted code in each version of Dawn (*id.* ¶¶ 2, 17-20; ECF No. 41, Exs. G-I); and (4) that Shopline directly infringed Shopify's copyrights in Dawn when it made a verbatim reproduction of Dawn's code to create Seed (which it continues to distribute and display across the globe) (Compl. ¶¶ 4-5, 24, 36, 39).  As in *Scholz Design, Inc. v. Sard Custom Homes, LLC*, 691 F.3d 182, 192 (2d Cir. 2012), where the Second Circuit reversed the 12(b)(6) dismissal of infringement claims based on the copying of the plaintiff's architectural drawings, this is a "straightforward case of copyright infringement. The plaintiff created original [code] which w[as] properly registered with the copyright office. The defendants allegedly used exact copies of th[at]

[code] without permission. Nothing more is required in order to state a claim for copyright infringement."

Shopline's Motion tellingly does not deny Shopify's allegations of wholesale copying, or say anything about them at all, other than to dismiss them as "conclusory." Mot. at 2. Instead, Shopline premises its Motion on the theory that Shopify fails to state its claims because the Complaint does not identify "every portion" of "copyright protectable" Dawn code that Shopline copied, and which corresponding portions of Seed's code are "substantially similar." *Id.* at 9, 14. This is pure misdirection. Shopify does not merely allege that Shopline copied ***portions*** of Dawn's code, or even that it made verbatim copies of only some portions. It alleges that Shopline copied ***all of it***—lock, stock, and barrel. Compl. ¶¶ 24, 39. That verbatim, pre-translation duplication of Dawn infringed Shopify's exclusive right to reproduce its work and "of course … is actionable as copyright infringement." *Hoehling*, 618 F.2d at 979-80; *accord Atari Games Corp. v. Nintendo of Am. Inc.*, 975 F.2d 832, 840 (Fed. Cir. 1992) ("verbatim copying is infringement."); *Mitchell v. Dyer*, 2010 WL 11601036, at *3 (C.D. Cal. Aug. 12, 2010) (denying motion to dismiss where allegations of "extensive verbatim copying" of copyrighted book were "sufficient to state a copyright infringement claim" even though the "Plaintiff has not identified the particular lines from the Book that were copied verbatim").

There is no question that Shopline's verbatim copy encompassed protectable expression. That is established by the "presumption" of copyrightability that attaches to Dawn by virtue of Shopify's copyright registrations. *IBM Corp. v. Micro Focus (US), Inc.*, 676 F. Supp. 3d 263, 274 (S.D.N.Y. 2023); 17 U.S.C. § 410(c) (a "certificate of a registration … shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate"). The Court therefore "need not" attempt to discern, particularly at the pleadings stage, "which portions" of

Dawn's code are protectable, given Shopify's allegations of infringement via "verbatim copying." *4DD Holdings, LLC v. United States*, 169 Fed. Cl. 164, 180 (2023) (defendant's "verbatim copying" of object code was infringement); *cf. Fonar Corp. v. Domenick*, 105 F.3d 99, 106 (2d Cir. 1997) (vacating Rule 56 dismissal of copyright claim because "[a]ssuming that [defendant] made complete copies of [plaintiff's] software," as the plaintiff alleged, "we have no doubt that there are at least material issues of fact as to whether protected elements of the software were copied.").

Substantial similarity is the wrong framework for evaluating Shopify's allegations of complete and identical copying. If a Shopline employee publicly admitted that she made an exact duplicate of Dawn to create Seed, there would be no reason to inquire as to whether that duplicate was "substantially similar" to the copyrighted original. *See, e.g.*, *BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395, 402 (S.D.N.Y. 2016) (finding defendant infringed plaintiff's copyrighted images where "there is no dispute that Defendant directly copied the images wholesale from third-party websites; the images used by Defendant were not merely substantially similar, they were identical to the [plaintiff's] images"). Shopify has no such admission (yet), but the Complaint alleges a plethora of similarities and identicalities between Dawn's and Seed's code—and the websites they generate—that could not possibly exist if Seed were independently developed. *See* Compl. ¶¶ 4-5, 24-33, 39; *supra* at 5-7. These allegations more than plausibly allege Shopline's verbatim reproduction.

Shopline quibbles with Shopify's pleaded evidence of wholesale copying. It devotes the bulk of its brief (and many bolded/italicized sentences) to arguing that Dawn is not registered as a "computer program," that HTML (or markup code) is not the same as source code, and that Shopify's copyrights in Dawn's markup code do not "extend" to the appearance (or "look and

feel") of the webpages designed by that code. Mot. at 1-11, 14-15, 16-22. But none of that matters at this point. Shopify's certificates of registration for Dawn's HTML and source code speak for themselves. Compl. ¶ 19 (incorporating the registrations). Shopify is not currently suing Shopline for copying the "look and feel" of the websites generated by Dawn's markup code. *See* Mot. at 16-22. It is suing because Shopline copied the code itself. The Complaint proffers examples of striking similarities in the webpages generated by each theme's code because those similarities are highly probative of Shopline's verbatim reproduction of Dawn's code.[5] Shopline's arguments about whether Shopify's registrations cover and protect the appearance of the sites that Dawn generates are irrelevant.

Shopline's responses to other evidence of its misconduct are similarly off base. For instance, in response to Shopify's allegation that the terms "dawn-test" and "Dawn" appear on a website that Shopline used to test the stolen code, Shopline claims that Shopify fails to identify how its use of those terms infringes the "protectable elements" of "any copyrighted work," and asserts that "dawn" is a "common English word (and name)." Mot. at 23-24. That fails the straight-face test. Shopify is not claiming exclusive control over the word "dawn." Shopline does not infringe merely because that word inexplicably shows up where it should not be. Rather, Shopify highlights these facts because the presence of "dawn" and "dawn-test" on Shopline's site

---

[5] Shopline acknowledges that "there are, of course, similar features between" the Complaint's cited examples, but claims that these webpages have nothing to do with its alleged code-copying, and offers its own counter-examples of purportedly different webpages generated by the two themes. Mot. at 17-18. This is more water-muddying. Some Dawn- and Seed-generated webpages will look different, particularly after Shopline's minor changes to the Dawn code and given that both themes are user-customizable. But that is no answer for the damning identity in other areas. Regardless, if Shopline truly wishes to dispute the facts Shopify has alleged, it can do so through discovery, not on a motion to dismiss where Shopify's factual allegations must be "accepted as true." *Blagman*, 2013 WL 2181709, at *1 (*quoting Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

is powerful evidence of Shopline's wholesale copying.[6]  If Shopline has an innocent explanation for the appearance of those terms, it can advance that as the case proceeds, consistent with its Rule 11 obligations.  But it is highly unlikely to alter the obvious conclusion that Shopline reproduced Dawn *in toto*, including all of the protectable expression in Dawn's code.

Shopline also attempts to sow confusion by arguing that the Complaint "fails to distinguish between the various versions of Dawn and Seed" or allege which particular version(s) of Dawn Shopline copied and when.  Mot. at 12.  Shopline describes dates for various updates of Seed's code on GitHub that apparently show, at most, that Seed was updated twice on GitHub before Dawn Version 13.0.0 was published.  *Id.*  Shopline claims that this means that "it is entirely possible that Shopline US's allegedly infringing code actually predated Shopify's publication of the code it claims was infringed."  *Id.* (emphasis omitted).

Shopline comes close here to actively misleading the Court.  Shopline's own timeline makes clear that both Versions 1.0.0 and 7.0.0 of Dawn were published *long before* Seed's first update on GitHub.  *Id.*  As is evident from Dawn's code, each successive version builds upon the prior and includes much of the same content.  *See* ECF No. 41, Exs. D-F.  Only Shopline can know which particular version(s) of Dawn it copied and when.  That—and what if anything Shopline's updates to Seed actually reveal—is a subject for discovery, not something that Shopify is obligated to know or plead at this point.  As a sister court in this district explained, "at the pleading stage, a 'plaintiff need not specify each infringing act with respect to each original work; the Court recognizes that discovery is likely to provide many of the details of the allegedly infringing acts and much of this information may be exclusively in defendants' control.'"  *Klauber Bros., Inc. v. Jenny Yoo Collection, Inc.*, 2017 WL 4082483, at *4 (S.D.N.Y. July 18, 2017) (citation omitted).

---

[6] Until Shopline hastily removed it shortly after the Complaint's filing, the term "Shopify" appeared multiple times in Shopline's search infrastructure and code.

Shopify's Complaint specifically identifies each copyrighted work and the allegedly infringing work that is the subject of its claims, alleges Shopline's acts of copying, and alleges ongoing infringement.   As this court and others have recognized, that states a claim for infringement.  *Blagman*, 2013 WL 2181709, at *3 (plaintiff sufficiently pleaded infringement where he "specified the original works that are the subject of his copyright claim," alleged that he owned and registered the works, alleged acts by which the defendants infringed, and alleged "continued infringement"); *IBM Corp.*, 676 F. Supp. 3d at 273 n.6 (rejecting argument that plaintiff "failed to plead when the allegedly infringing conduct occurred" because "allegations of a continuing infringement … are sufficient").

None of Shopline's cases counsels otherwise.  In *ID Tech LLC v. Toggle Web Media LLC*, 2023 WL 2613625, at *3-6 (E.D.N.Y. Mar. 23, 2023) (Mot. at 12-13, 17), the court dismissed a claim based on the alleged infringement of the plaintiff's "'website' as a whole," since the plaintiff only held registered copyrights in particular "photographs" and "text" on the website.  Here, as much as Shopline would pretend otherwise, Shopify is suing for the infringement of *exactly* what its registrations cover, not any HTML-driven output.  Shopline's other cited cases involved the dismissal of claims that failed to distinguish between the alleged infringement of registered and unregistered works and/or asserted infringement of works the plaintiff did not own, among other pleading failures.  *See* Mot. at 13 (citing *Paul Rudolph Foundation v. Paul Rudolph Heritage Foundation*, 2022 WL 4109723, at *6 (S.D.N.Y. Mar. 20, 2024) (counterclaim defendant "fail[ed] to specify which works within a 152-photograph group copyright registration were used in violation" of its copyrights and asserted a claim based on a photograph "in the public domain"); *Lumetrics Inc v. Blalock*, 23 F. Supp. 3d 138, 143-44 (W.D.N.Y. 2014) (plaintiff alleged infringement of "twelve separate software programs, only five of which are registered," and made

"no distinction between the registered and unregistered copyrights") (quotations omitted)).  Here, in marked contrast, Shopify alleges which of its registered works Shopline infringed.[7]

Because Shopify has far exceeded the bar for alleging copyright infringement based on Shopline's verbatim reproduction of Dawn, Shopline's Motion must be denied.

## II.  SHOPIFY HAS AMPLY ALLEGED COPYRIGHT INFRINGEMENT BASED ON SHOPLINE'S CREATION AND ONGOING DISTRIBUTION OF THE INFRINGING SEED DERIVATIVE.

Shopline's infringement did not cease after it copied Dawn.  As Shopify alleges, Shopline then translated Dawn into a different programming language before making largely superficial changes to Dawn's code.  *See* Compl. ¶¶ 4-5, 24, 39-36.  The end result was the creation of Seed, "an infringing derivative of Dawn," which Shopline sells and distributes as its own.  *Id.* ¶ 47.

Translations like Seed are paradigmatic "derivative work[s]" that are "based upon" a "preexisting work[]."  17 U.S.C. § 101.  This is no less true in the context of copyrighted code, as courts have consistently recognized.  *See, e.g.*, *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 563–64 (7th Cir. 2003) (affirming post-trial judgment for plaintiff where defendant "copied and translated the [plaintiff's] source code … and then distributed the translated version"); *Lilith Games (Shanghai) Co. v. UCool, Inc.*, 2015 WL 5591612, at *4, *6 (N.D. Cal. Sept. 23, 2015) (finding video game developer likely to succeed on the merits of its copyright claim where competitor copied and "merely translated" developer's copyrighted code to create rival game; a

---

[7] Shopline also cites *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1128 (9th Cir. 2002) (Mot. at 12), an appeal from an order imposing Rule 11 sanctions on an attorney who filed a frivolous copyright infringement complaint based on an allegedly infringing work that was created "some six years" before the plaintiff's work, *id.* at 1122-1124, 1129, where the "[t]he record of creation [was] telling and conclusive" regarding when each work was created.  *Id.* at 1129.  This case is the opposite of that one.  It is the defendant, Shopline, that crosses the line by falsely suggesting that Seed was independently created and/or that it predates Dawn.

translation "still infringe[s] on [plaintiff's] copyright in the same way that a French translation of an English novel would infringe on the latter's copyright").

To plead its claim that Seed is an infringing derivative of Dawn, Shopify must allege that Shopline (i) "actually copied" Dawn and (ii) that "the copying is illegal because a substantial similarity exists between" Seed and "the protectible elements of" Dawn. *IBM Corp.*, 676 F. Supp. 3d at 274 (internal quotation and citation omitted).[8] Shopify has made such allegations in spades.

### A.    Shopify Pleads That Shopline Actually Copied Dawn.

Shopline does not mention the standard for evaluating the first prong, much less seriously argue that Shopify has not satisfied it (other than speciously suggesting that Seed's code could have "predated" Dawn's (*see supra* at 12)).  Regardless, Shopify clearly satisfies this element.  To allege that a defendant has "actually copied," a plaintiff may either allege "direct copying," or, absent that, "may establish copying circumstantially by demonstrating that the person who composed the defendant's work had access to the copyrighted material and that there are similarities between the two works that are probative of copying." *Elatab v. Hesperios, Inc.*, 2021 WL 2226877, at *5 (S.D.N.Y. June 2, 2021) (Carter, J.) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003)).  Here, Shopify has alleged both direct copying and access plus probative similarities.

Notably, "this case presents the rare scenario where there is direct evidence of copying," *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992), and is made even rarer by the fact that such evidence is detailed in the pleadings.  Courts have found direct evidence where, *inter alia*, there are "common errors in the two works," or other "inexplicable identit[ies]" and "matches" in their

---

[8] Shopline appears to imply that this two-element articulation of the standard for demonstrating copyright infringement is a "post-*Iqbal*" creation (Mot. at 8), presumably to suggest that *Iqbal* somehow raised the bar.  But that test long-predates *Iqbal*.  *See, e.g.*, *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir. 1995).

content. *Eckes v. Card Prices Update*, 736 F.2d 859, 863-64 (2d Cir. 1984) (finding defendants infringed plaintiffs' copyrighted book based on "strong credible evidence" of direct copying). That is exactly what Shopify avers. As set forth above, Shopify alleges the identical organization and structure of much of Dawn's and Seed's code, Seed's exact replication of large swaths of arbitrary file names and numerical values, its exact reproduction of thousands of lines of code, and the otherwise inexplicable appearances of terms like "Shopify," "Dawn," and "dawn-test" in places they do not belong. *See* Compl. ¶¶ 23-34; *supra* at 5-7. That is compelling, direct evidence of copying. *See, e.g., Jamison Bus. Sys., Inc. v. Unique Software Support Corp.*, 2005 WL 1262095, at *9 (E.D.N.Y. May 26, 2005) (finding direct evidence that defendant copied plaintiff's source code where "it is clear that, apart from the line numbers at the beginning of each line of code, significant portions of the source code are indeed identical"); *M. Kramer Mfg. Co., Inc. v. Andrews*, 783 F.2d 421, 446 (4th Cir. 1986) (finding evidence of direct copying of plaintiff's computer program based on reappearance of a "hidden legend" in defendants' program and "the almost complete duplication of many lines of the object code").

Even if Shopify's allegations of direct copying were reasonably in question, Shopify has clearly demonstrated access and similarities reflective of copying. Shopline indisputably had access to Dawn's publicly available code, as evidenced, *inter alia,* by the fact that it presented a copy of one version with its Motion (Mot. at 8 n.7), and the Complaint's examples of the "similarities between" the Dawn and Seed code are highly "probative of copying." *Elatab*, 2021 WL 2226877, at *5.

### B.    Shopify Pleads That Seed Is Substantially Similar to Dawn.

Shopify has also alleged with extensive supporting detail that Seed is substantially similar to the protectable elements of Dawn. As this Court has recognized, "the question of substantial similarity typically presents an extremely close question of fact" that is "generally … reserved to

the trier of fact." *OMG Accessories LLC v. Mystic Apparel LLC*, 2021 WL 1167528, at *2 (S.D.N.Y. Mar. 25, 2021) (Carter, J.) (cleaned up).  Yet without so much as mentioning the tests used to assess substantial similarity, Shopline asks the Court to declare "as a matter of law" at the pleading stage that Shopify cannot establish it.  Mot. at 8.  That is an extraordinary request, made more so by the fact that Shopify has easily carried its pleading burden.

"The Court need not be fluent in" code or programming language to recognize that Shopify has alleged "substantial similarity and appropriation of expression" based on Shopline's "translation" and use of code from Dawn.  *Radji v. Khakbaz*, 607 F. Supp. 1296, 1299-1300 (D.D.C. 1985), *amended*, 1987 WL 11415 (D.D.C. May 15, 1987) (rejecting defendants' "erroneous assumption that because they translated portions of plaintiff's book from English to Farsi, and because the Court does not read or understand Farsi, plaintiff has failed to provide a basis upon which the Court could determine whether the Iran Times articles were substantially similar to the excerpts from plaintiff's book and whether defendants copied plaintiff's protected expression.").

The crux of Shopline's argument to the contrary appears to be that Shopify's Complaint must identify every portion of HTML code that Shopline copied, and that the exemplar portions Shopify does identify are "unprotectable."  Mot. at 9-10.  Shopline is doubly wrong.

First, Shopline asserts, based on a single out-of-circuit case, that "in the HTML context, courts have required that plaintiffs … list every portion of Plaintiff's HTML code that Defendant allegedly infringed."  *Id.* (quoting *Media.net*, 156 F. Supp. 3d at 1068).  Not so.  Rule 8 does not demand such "particularity in pleading" for copyright claims.  *Blagman*, 2013 WL 2181709, at *3. Courts in this district have consistently held that complaints charging infringement of copyrightable code were adequately pleaded even where they did not identify all, or even any,

specific lines of copied code.  In *IBM Corp.*, for example, IBM alleged that the defendant "copied and reverse engineered parts" of its copyrighted software to create infringing "derivative software applications."  676 F. Supp. 3d at 267-69.  Although IBM's complaint did not identify a single example of a specific line of copied code,[9] it alleged "numerous similarities" probative of code copying, including the "near identical architecture and design" between the softwares, the defendant's use of IBM's "internal [file] structures," and the presence of other vestiges of IBM's code in the defendant's software.  *Id.* at 269.  The court denied the defendant's motion to dismiss because IBM had sufficiently stated its claim.  *Id.* at 275; *accord Yeda Rsch. & Dev. Co. Ltd. v. iCAD, Inc.*, 2019 WL 4562409, at *1 (S.D.N.Y. Sept. 5, 2019) (denying motion to dismiss where infringing software allegedly had "same intended use, fundamental scientific technology, and characteristics as" plaintiff's source code); *Software For Moving, Inc. v. Frid*, 2010 WL 2143670, at *2 (S.D.N.Y. May 27, 2010) (same, where plaintiff alleged that the defendant's "reverse-engineering" of its code "included directly copying large portions of [the] computer code"); *Live Face on Web, LLC v. Biblio Holdings LLC*, 2016 WL 4766344, at *6 (S.D.N.Y. Sept. 13, 2016) (same, where the "defendants' cursory invocation of the de minimis doctrine" to argue that the plaintiff did not sufficiently allege the copied source code "provides no basis to conclude, prior to any discovery, that the two are not 'substantially similar' as a matter of law").

Here, as in these other code-copying cases, Shopify has alleged sweeping copying, specifically alleged that Dawn contains the "perfect reproductions of over one thousand lines" of protectable code, and has provided numerous examples of near-identical lines of HTML.  Compl. ¶¶ 27-28; Exs. A-B.  Shopify "need not plead" "with particularity the copyrightable elements" of Dawn to state its claims.  *Software For Moving*, 2010 WL 2143670, at *3; *accord Tianhai Lace*

---

[9] *See generally IBM Corp. v. Micro Focus (US), Inc.*, Case No. 22-cv-00910-VB, Dkt. 39.

*USA, Inc. v. David's Bridal LLC*, 2022 WL 4111170, at *3 (S.D.N.Y. Sept. 8, 2022) (denying motion to dismiss direct infringement claim where plaintiff sufficiently alleged substantial similarity even though complaint did "not include specifics about the elements" of plaintiff's fabric designs that were copied; an issue "better left to the trier of fact to resolve"); *Ellis v. Jean*, 2011 WL 6368555, at *4 (S.D.N.Y. Dec. 16, 2011) (same, where perceptible similarities between the parties' songs prevented the court from ruling on substantial similarity as a matter of law).[10]

Shopline's Motion attempts to distinguish *IBM* because it (like *Yeda*, *Software For Moving*, and *Live Face*) concerned the alleged infringement of a computer program or source code, whose copyrights Shopline contends differ from copyrights in HTML because they extend to "'non-literal' aspects such as structure and organization." Mot. at 10 (citing *IBM*). But that distinction is immaterial for assessing the adequacy of Shopify's allegations (and, of course, Shopify's registration for Dawn Version 1.0.0 covers source code too). In those cases, the complaints alleged the defendants' copying of protectable lines of "literal code" (*id.*), without identifying every (or any) specific portions copied, and that was sufficient to plead substantial similarity. Shopify has done that and more here.

*Media.net* is the only case Shopline puts forth to argue that "every portion" of copied code must be alleged. Mot. at 9-11. There, the plaintiff alleged that the defendant copied only a "portion of [its] underlying HTML source code." 156 F. Supp. 3d at 1068. After denying the defendant's early motion for summary judgment and affirming that HTML code is protectable and "infused

---

[10] As mentioned, Shopline does not say a word about the "ordinary" and "discerning" observer tests that courts use to assess substantial similarity. But neither of those tests allow a court to "dissect [the works] into their separate components, and compare only those elements which are in themselves copyrightable," *OMG Accessories LLC*, 2021 WL 1167528, at *3 (cleaned up), as Shopline appears to advocate here. Mot. at 9-16. Instead, both tests require a court to compare the two works' "total concept and overall feel ...., as instructed by [its] good eyes and common sense." *Id.* (cleaned up). For the reasons explained herein, good eyes and common sense leave no doubt about the sufficiency of Shopify's allegations of substantial similarity.

with creativity," *id.* at 1067, the court dismissed the claim with leave to amend because the complaint did not describe how the defendant had access to the plaintiff's code or which particular portions were copied. *Id.* at 1068-69. Here, in contrast, Shopline does not dispute that it had access to Dawn's publicly available code. And requiring the identification of "every portion" copied would make no sense when Shopify alleges that Shopline copied Dawn *in toto*, including *everything* in it that is protectable, and then translated it and made cosmetic changes to conceal the differences between particular copied portions. What is more, the lone case that *Media.net* miscited in support of its suggestion that a plaintiff must allege "every portion" of copied HTML actually held the exact opposite—that it is "without merit" to argue that a plaintiff must identify every portion copied where, as here, he alleges copying of "the entire Work." *Reinicke v. Creative Empire, LLC*, 2013 WL 275900, at *6 (S.D. Cal. Jan. 24, 2013).

Shopline's attacks on the Complaint's specific, but non-exhaustive examples of copied HTML code are equally infirm. *See* Mot. at 13-16; Compl. ¶ 28. Shopline again misses the point by arguing that the "srcset" attribute, the "variable names," and the "width values" in Dawn's code are not themselves independently protectable. Mot. at 15-16. That is akin to arguing that the words "and" or "the" or a reference to a specific calendar year ("2010") in a copyrighted book are not protectable. Shopify does not claim that the variable name "width" or the width value "550w" are themselves individually protectable in the abstract, and such words and numbers (and their functional purpose) are not the basis for Shopify's claim. The Complaint includes those examples of copied attributes because they are part of near-identical lines of HTML code in the two themes that would not be identical but for Shopline's copying.

Shopify expressly alleged that there were a host of other similarities in the Dawn and Seed code. Because Shopline has now put versions of the codes before the Court, other instances of

Seed's near-identical retention of protectable HTML code from Dawn are readily apparent.  *See* Exs. A-B.  Shopify's employees authored the original lines of code for Dawn, making creative choices in determining how to write and structure each line and what their component parts should consist of, down to the many "arbitrarily-named variables" and "class names" they selected "and portions of the code that have no function" (*Media.net*, 156 F. Supp. 3d at 1057, 1065-67)—*e.g.*, "article-template__comment-fields," "field field--with-error," "form__label field__label," and "icon-wrap."  Ex. A at 3, 6-7.  The HTML code in Dawn could have been written in "multiple ways" and "meet[s] the requisite level of creativity to be copyrightable."[11]  *Media.net*, 156 F. Supp. 3d at 1065-66.  But instead of following that path and writing its own HTML code for Seed, Shopline copied and continues to use Shopify's code.

For example, Exhibit A shows portions of Dawn's HTML code side-by-side with Seed's. The Dawn code in Exhibit A generates the appearance of an article (or blog post) on a Shopify merchant's online store that describes a product offered for sale and can include images of the product and user comments.[12]  Even though Seed is presented in a different programming language, it is obvious from the below Exhibit A excerpt that Seed's code (on the right) was lifted straight from Dawn's (on the left):

---

[11] As yet one more example, Shopify's code also contains comments. "Like class names, a developer can write anything in a comment. This again requires some creative thinking" and is protectable.  *Id.* at 1066.  Shopline not only stole the operational HTML code, it also took the comments within the code that were written by Shopify software engineers.  *E.g.*, *compare* https://github.com/Shopify/dawn/blob/main/snippets/pagination.liquid                    *with* https://github.com/shoplinedev/Seed/blob/main/snippets/pagination.html (first twelve lines).

[12] The Dawn code reflected in Exhibit B helps to determine the appearance of merchant webpages showcasing a collection of products offered for sale (*e.g.*, a grid depicting various items of clothing), including the title, image, and price of the products, and a button for adding the products to a user's cart.

| DAWN | SEED |
|---|---|
| ```html<br><div class="article-template__back element-margin-top center"><br>  <a<br>  href="{{ blog.url }}"<br>  class="article-template__link link animate-arrow"<br>  ><br>    <span class="icon-wrap"><br>      {% render 'icon-arrow' %}<br>    </span><br>    {{ 'blogs.article.back_to_blog' | t: title: blog.title }}<br>  </a><br></div><br>{%- if blog.comments_enabled? -%}<br>  <div class="article-template__comment-wrapper background-secondary"><br><br><br><br>    <div id="comments" class="page-width page-width--narrow"><br>      {%- if article.comments_count > 0 -%}<br>        {%- assign anchorId = '#Comments-' | append: article.id -%}<br>        <h2<br>          id="Comments-{{ article.id }}"<br><br>          tabindex="-1"<br>        ><br>          {{ 'blogs.article.comments' | t: count: article.comments_count }}<br><br><br><br>        </h2><br>        {% paginate article.comments by 5 %}<br>          <div class="article-template__comments"><br>            {%- if comment.status == 'pending' and comment.content -%}<br>              <article<br>                id="{{ comment.id }}"<br>                class="article-template__comments-comment"<br>              ><br>                {{ comment.content }}<br>                <footer class="right"><br>                  <span class="circle-divider caption-with-letter-spacing"><br>                    {{ comment.author }}<br>                  </span><br>                </footer><br>              </article><br>            {%- endif -%}<br><br>            {%- for comment in article.comments -%}<br>              <article<br>                id="{{ comment.id }}"<br>                class="article-template__comments-comment"<br>              ><br>                {{ comment.content }}<br>                <footer class="right"><br>                  <span class="circle-divider caption-with-letter-spacing"><br>                    {{ comment.author }}<br>                  </span><br>                  <span class="caption-with-letter-spacing"><br>                    {{ comment.created_at | time_tag: format: 'date' }}<br>                  </span><br>                </footer><br>              </article><br>            {%- endfor -%}<br><br>            {% render 'pagination', paginate: paginate, anchor: anchorId %}<br>``` | ```html<br><div class="article-template__back element-margin-top page-width"><br>  <a<br>  href="{{blog.url}}"<br>  class="article-template__link link animate-arrow body3"<br>  ><br>    <span class="icon-wrap"><br>      {{snippet "icon-arrow"}}<br>    </span><br>    {{t "blog.general.back"}}<br>  </a><br></div><br>{{#if blog.comments_enabled}}<br>  <div class="article-template__comment-wrapper"><br><br><br><br>    <div id="comments" class="page-width"><br>      {{#if article.comments_count > 0}}<br>        {{assign "anchor_id" (append "#Comments-" article.id)}}<br>        <h2<br>          id="{{anchor_id}}"<br>          class="article-template__comment-title title4"<br>          tabindex="-1"<br>        ><br>          {{#if article.comments_count "==" 1}}<br>            {{t "blog.comment.single_count" count=article.comments_count}}<br>          {{else}}<br>            {{t "blog.comment.title" count=article.comments_count}}<br>          {{/if}}<br>        </h2><br>        {{#paginate article.comments by=5}}<br>          <div class="article-template__comments"><br>            {{#and (if comment.status "==" "pending") comment.content}}<br>              <article<br>                id="{{comment.id}}"<br>                class="article-template__comments-comment body3"<br>              ><br>                {{comment.content}}<br>                <footer class="right"><br>                  <span class="circle-divider caption-with-letter-spacing body6"><br>                    {{comment.author}}<br>                  </span><br>                </footer><br>              </article><br>            {{/and}}<br><br>            {{#each article.comments as |comment|}}<br>              <article<br>                id="{{comment.id}}"<br>                class="article-template__comments-comment body3"<br>              ><br>                {{comment.content}}<br>                <footer class="right"><br>                  <span class="circle-divider caption-with-letter-spacing body6"><br>                    {{comment.author}}<br>                  </span><br>                  <span class="caption-with-letter-spacing body6"><br>                    {{date comment.created_at "abbreviated_date"}}<br>                  </span><br>                </footer><br>              </article><br>            {{/each}}<br>            {{#if paginate.pages ">" 1}}<br>              {{snippet "pagination" paginate=paginate anchor=""}}<br>``` |

If Shopline wants to argue that Shopify's HTML code does not clear the "extremely low" threshold for protectable creativity, *Media.net*, 156 F. Supp. 3d at 1065, or that Seed's near-identical lines of code are somehow not "substantially similar" to Dawn's, it will have an

opportunity to do so at summary judgment or at trial.  But Shopify has alleged substantial similarity.  And these already obvious similarities will be even more glaring once the artifice of Shopline's translation is stripped away by witnesses.  Shopline's request for a premature, legal determination on the fact-bound question of substantial similarity must be rejected.[13]

## **CONCLUSION**

For the foregoing reasons, Shopify respectfully requests that the Court deny Shopline's Motion.

Dated: October 29, 2024                    Respectfully submitted,

                                           WILSON SONSINI GOODRICH & ROSATI
                                           Professional Corporation

                                           */s/ David H. Kramer*
                                           David H. Kramer (admitted *Pro Hac Vice*)
                                           650 Page Mill Road
                                           Palo Alto, CA 94304
                                           Telephone: (650) 493-9300
                                           Email: dkramer@wsgr.com

                                           Jeremy Auster, Bar No. 5539101
                                           1301 Avenue of the Americas, 40th Floor
                                           New York, NY 10019
                                           Email: jauster@wsgr.com
                                           *Counsel for Plaintiff, Shopify Inc.*

---

[13] Even if Shopline could argue persuasively for dismissal (and it cannot), there is no justification for its audacious plea for dismissal *with* prejudice on the ground that Shopify did not amend after Shopline filed its pre-motion letter. Mot. at 24. This Court's Individual Practices only contemplate the possibility of such a dismissal where the parties have "had a pre-motion conference" with the Court and "[d]uring" that conference the plaintiff has "advise[d] the Court and its adversary whether it intends to file an amended pleading." (§ 2(D)(i)-(ii)). Shopify's response to Shopline's pre-motion letter offered to amend within three weeks if the Court so desired (even though Shopify's allegations already state a claim).  ECF No. 30 at 3.  The Court thereafter denied Shopline's request for a conference and ordered complete briefing.  ECF No. 32.  There is nothing in the Court's practices that speak to this situation.  Regardless, it would be error to dismiss a claim with prejudice where, as here, an amendment would address any supposed insufficiency.  *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (reversing denial of leave to amend because district court "exceeded the bounds of its discretion" where plaintiff offered to amend in response to a motion to dismiss and "[a]n amended complaint … may cure the remaining defects" in the complaint).