UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHOPIFY INC.,<br><br>    Plaintiff,<br><br> v.<br><br>SHOPLINE TECHNOLOGY HOLDINGS PTE. LTD., SHOPLINE US, INC., and SINOXPRESS INC.,<br><br>    Defendants. | Case No. 1:24-cv-03691-ALC-GS |

## STIPULATED ESI PROTOCOL AND ORDER

  The parties to the above-captioned action hereby stipulate and agree to the following protocols relating to the discovery of electronically stored information, including digitized hard copy documents ("ESI"), which shall supplement the Federal Rules of Civil Procedure, the Local Rules of the Southern District of New York, the Individual Practices of Judge Andrew L. Carter, and the Individual Practices in Civil Cases Before Magistrate Judge Gary Stein.

  **I.**  **Definitions**

  A. "**Confidentiality Designation**" means the legend affixed to Documents as "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" as defined by, and subject to, the terms of the Protective Order that will be submitted for Court approval.

  B. "**Document**" or "**Documents**" means any writing however recorded, including handwriting, typewriting, printing, photographing, photocopying, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds or symbols, or combinations thereof, and any record created thereby, regardless of the manner in which the record

has been stored, and also specifically includes Electronically Stored Information and Hard-Copy Documents.

      C.      "**Electronically stored information**" or "**ESI**," means any Document or Documents stored or transmitted in electronic form, including but not limited to e-mail, text messages, and documents created on computers, such as Word documents and spreadsheets.

      D.      "**Hard-Copy Document**" means any Document existing in paper form at the time of collection.

      E.      "**Hash Value**" is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the text contained within the file or files.

      F.      "**Include**" and "**Including**" shall be construed to mean "include but not be limited to" and "including, but not limited to."

      G.      "**Load Files**" means electronic files provided with a production set of Documents and images used to load that production set into a Requesting Party's Document review platform.

      H.      "**Metadata**" means the information associated with each Document that is identified in Attachment A.

      I.      "**Native Format**" means and refers to the format of ESI in which it was generated and/or as used by the Producing Party in the usual course of its business. For example, the Native Format of an Excel workbook is a .xls or .xslx file.

      J.      "**Optical Character Recognition**" or "**OCR**" means the process of recognizing, and creating a file containing, visible text within an image.

      K.      "**Producing Party**" means and refers to the Party who produces certain documents in response to a request for the production of Documents.

L.      "**Requesting Party**" means and refers to the Party that serves a request for the production of Documents.

M.      "**Searchable Text**" means the text extracted or generated using OCR from any Document, which allows the Document to be electronically searched.

## II.     Identification of Responsive ESI

A Producing Party shall undertake a reasonable inquiry to identify all sources of ESI (e.g., email, workstations, mobile devices, servers, shared drives, and electronic messaging tools) likely to contain material responsive to a Requesting Party's document requests ("Responsive Sources").

The Parties agree that in responding to document requests, they will employ reasonable methods and protocols—including the use of date ranges, document custodians, and search terms and/or other automated search and review technology—to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

## III.    Extraction and Review of ESI

A.      De-Duplication.  A Producing Party may remove Documents identified as duplicative based on MD5 or SHA-1 (or comparable) hash values of the full text of the Documents at the family level across custodians and sources.

B.      Embedded Objects.  Non-image files that are embedded in other files ("Embedded Objects") shall be extracted as separate files and treated as attachments to the parent Document. The Parties shall meet and confer over any dispute with regard to the treatment of Embedded Objects.

C.      Searchable Text.  Text must be extracted directly from the native electronic file of ESI unless the Document requires redaction, is an image file, or is any other native electronic file that does not contain text to extract (e.g., non-searchable PDFs), in which case Searchable Text

shall be created using OCR, if possible. Extracted text shall include all comments, revisions, tracked changes, speaker's notes and text from Documents with comments or tracked changes, and hidden worksheets, slides, columns and rows. Extracted text from emails shall include all header information that would be visible if the email was viewed natively including: (1) the recipients(s), (2) the sender, (3) the CC and BCC recipients, (4) the subject line, (5) the date and time of the email, and (6) the names of any attachments.

      D.      <u>Exception Files</u>. The Parties will use commercially reasonable efforts to address Documents that present processing or production problems (including encrypted and/or protected files) ("Exception Files"). A Party is not required in the first instance to produce Exception Files it has been unable to resolve through commercially reasonable efforts except that: (a) the Parties will meet and confer regarding any request to produce a log of all Exception Files that contains the reasonably available Metadata for each Exception File; (b) the Parties will meet and confer regarding requests for the production of native versions of Exception Files; and (c) upon reasonable request, the Producing Party will undertake reasonable efforts to locate passwords for specifically identified Documents. Exception Files that are attached to produced Documents will be produced as a Bates-stamped placeholder TIFF bearing the legend, "This Document was unable to be processed." If the Parties cannot reach agreement on the handling of Exception Files through the meet and confer process, the matter may be submitted to the Court for resolution.

      **IV.**      **<u>Production of ESI</u>**

      A.      <u>General</u>. Except as otherwise provided herein, the Parties will produce Documents in TIFF Format. Spreadsheets (e.g., Excel files), audio files, and video files shall be produced in Native Format. All documents shall be produced with accompanying text and metadata files in the manner set forth in Exhibit A. The Parties are not obligated to manually populate any of the

4

fields in Exhibit A if such fields cannot reasonably be extracted from the document using an automated process, with the exception of the following fields: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) Confidentiality, (g) Redaction and (h) NativeFile fields, which should be populated regardless of whether the fields can be populated pursuant to an automated process.  A Requesting Party may request the production of Native Files of other Documents (e.g., PowerPoint Presentations) where the production of the Native File is reasonably necessary to the Document's comprehension or use, and such request shall not unreasonably be denied.

      B.      TIFFs.  All TIFFs produced by any party in this matter will be single page Group IV TIFF format with 300 dpi quality or better.  TIFF files will be named according to the corresponding Bates numbered images.  All Documents that contain comments, deletions and revision marks (including the identity of the person making the deletion or revision and the date and time thereof), speaker notes, or other user-entered data that the source application can display will be processed such that all that data is visible in the image.  Each TIFF image will be branded in the lower right-hand corner with its corresponding Bates number, and in the lower left-hand corner with its Confidentiality Designation, if any, using a consistent font type and size.  The Bates number and Confidentiality Designation must not obscure any part of the underlying image.  If the placement of either Bates number or Confidentiality Designation will result in obscuring the underlying image, the designation should be placed as near to that position as possible while preserving the underlying image.

      C.      Native Files.  For Documents produced in Native Format a Bates-stamped placeholder TIFF bearing the legend "This Document has been produced in Native Format" shall also be produced in the same way as any other TIFF, including with the relevant Confidentiality

designation, if any.  Native Files shall have a file name that includes the Bates number.  Any Party printing the Native File for use in this matter shall append and use the placeholder TIFF as a cover sheet to the Native File at all times.

D.  <u>Load Files</u>.  Productions will include image load files in Opticon or IPRO format and Concordance format data (.dat) files with reasonably available Metadata for all Documents.  All Metadata will be produced in UTF-16LE or UTF-8 as exported by commercially available document production tools.

E.  <u>Text Files</u>.  A single text file containing the Searchable Text shall be provided for each Document.  The text file name shall be the same as the Bates number of the first page of the Document with the Document extension ".txt" suffixed.  File names shall not have any special characters or embedded spaces.  Searchable Text shall be provided in UTF-8 as exported by commercially available document production tools.

F.  <u>Databases, Structured, Aggregated or Application Data</u>.  For requests in which responsive information is contained in a database or other structured or aggregated data source or otherwise maintained by an application, the Parties will use reasonable best efforts to produce the data and will meet and confer to determine an appropriate format.  If the Parties cannot reach agreement, the matter may be submitted to the Court for resolution.

G.  <u>Redactions</u>.  Metadata will be provided for redacted Documents just as for other Documents, except that text within Metadata fields may be replaced with the word "Redacted" for any information that is subject to redaction.  Redacted Documents shall be identified as such in the Metadata.

H.  <u>Color</u>.  PowerPoint files shall be produced in color.  Other Documents where color is reasonably necessary to their comprehension or use (e.g., Documents with track changes or

emails with color text) shall be produced in color. Documents produced in color shall be produced as single-page, JPG images with JPG compression and a high-quality setting as to not degrade the original image.

      I.      <u>Parent-Child Relationships</u>. Parent-child relationships (the association between an attachment and its parent Document or between embedded Documents and their parent) shall be preserved through the production of an appropriate Metadata field.

      J.      <u>Family Groups</u>. A Document and all other Documents in its attachment range, emails with attachments and files with extracted embedded OLE Documents all constitute family groups. If any member of a family group is determined to be responsive to a Party's document requests, then all members of that group must also be considered as responsive and produced. A responsive document within a family may only be withheld from production on the basis of privilege, the grounds for which must be stated on a privilege log. Where a Document that is part of a family is withheld, and its relationship to the rest of that document family is indicated using slipsheets, the Producing Party shall provide one Bates numbered slipsheet for each withheld Document. For example, if a Party withholds an email as privileged while producing the attachment, the parent-child relationship may be maintained by using slip sheets containing unique Bates numbers and the grounds for withholding of the email will be similarly stated on a privilege log.

      K.      <u>Privilege</u>. The Parties will exchange privilege logs that comply with Rule 26. The Parties agree to meet and confer at a later date to determine the parameters of the Parties' privilege logs.

    **V.**  **Processing Specification for Hard-Copy Documents**

  A.  <u>General</u>.  Hard-Copy Documents are to be scanned as they are kept in the ordinary course of business.  For Hard-Copy Documents found in folders or other containers with labels, tabs, or other identifying information, such labels and tabs shall be scanned where reasonably practicable.  The Producing Party will use reasonable efforts to unitize Hard-Copy Documents, meaning, avoiding merging distinct Hard-Copy Documents into a single record, and splitting a single Hard-Copy Document into multiple records.  Original Document orientation (i.e., portrait v. landscape) should be maintained.

  B.  <u>Searchable Text</u>.  For Hard-Copy Documents, Searchable Text shall be created using OCR.

    **VI.**  **Redacted Documents**

  Redactions shall identify in some manner (such as through highlighting in black or through the use of redaction boxes) the location and extent of redacted information.  The text that was redacted shall not be included in a redacted document's text file.  Where a responsive document contains both redacted and unredacted content, the Producing Party shall produce the remainder of the unredacted portions of the document and the text/OCR corresponding only to the unredacted portions.  E-mail header information (e.g., date, subject line, etc.) should not be redacted unless it is independently privileged.

  Redacted versions of spreadsheets, computer slide presentations, etc. may be produced with TIFF image files and OCR in lieu of a native file, TIFF placeholder image and extracted text file.  Any metadata fields for redacted documents that would reveal privileged information shall be excluded.  Each Producing Party will make reasonable efforts to ensure that its discovery vendor, prior to conversion to TIFF, reveals non-privileged hidden data from redacted native files

that are produced as TIFF image files and will be formatted so as to be readable (e.g., column widths should be formatted so that numbers do not appear as "#########").  The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the TIFF image is not reasonably usable.

## VII.    Cross-Border Discovery and Data Privacy

The Parties will meet and confer regarding any issues related to cross-border discovery, including limitations on the collection, review, and production of any Document imposed by the applicable laws of the People's Republic of China and/or Singapore, including, but not limited to, data privacy law, cybersecurity law, and state secrecy law.  Upon identifying documents or information that are responsive to Shopify's discovery requests and subject to any of the aforementioned foreign laws, Shopline will provide reasonably prompt, written notice of the nature of the documents or information implicated and the pertinent issues related to such laws, and the Parties will thereafter meet and confer in good faith to explore any compromises or alternatives that would permit the production of documents or information in a more expedited manner and consistent with the applicable foreign law(s). Nothing in this ESI protocol, or the Protective Order, is intended to, nor shall it, waive or override the legal requirements imposed by any of these laws as they pertain to data subject to them.

## VIII.    Cooperation

The Parties recognize that the stipulated ESI protocols are based on the facts and circumstances as they are currently known, and that amendments may become necessary as the action proceeds.  This stipulation may be amended by written agreement of the Parties.  The Parties will meet and confer to resolve any dispute regarding the application of the ESI Protocol before seeking Court intervention.

SO STIPULATED AND AGREED:

By: */s/ Jeremy Auster*
David H. Kramer (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI P.C.
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 493-9300
dkramer@wsgr.com

Jeremy Auster
WILSON SONSINI GOODRICH & ROSATI P.C.
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Telephone: (212) 999-5800
jauster@wsgr.com

*Counsel for Plaintiff Shopify, Inc.*

Dated: October 31, 2025

By: */s/ Michael E. Williams*
Michael E. Williams (*pro hac vice*)
Kayla M. Rooney
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
michaelwilliams@quinnemanuel.com
kaylarooney@quinnemanuel.com

Rachel E. Epstein
QUINN EMANUEL URQUHART & SULLIVAN, LLP
295 Fifth Avenue
New York, NY 10016
Telephone: (212) 849-7000
rachelepstein@quinnemanuel.com

*Counsel for Defendants Shopline Holdings Pte. Ltd. and Shopline US, Inc.*

Dated: October 31, 2025

SO ORDERED.

Dated: \_\_November 4,\_\_\_\_\_, 2025

New York, New York

_____
HON. GARY STEIN
United States Magistrate Judge

## ATTACHMENT A

| Field Name | Populated For (Email, Edoc, or Both) | Field Description |
|---|---|---|
| BegBates | Both | Control Numbers |
| EndBates | Both | Control Numbers |
| BegAttach | Both | Control Numbers (First production bates number of the first document of the family) |
| EndAttach | Both | Control Numbers (Last production bates number of the last document of the family) |
| PgCount | Both | Page Count of Produced Images |
| Custodians | Both | Custodians name (ex. John Doe) |
| EmailSubject | Email | Subject line of email |
| DateTimeSent | Email | Date and time email was sent (MM//DD/YYYY HH:MM) |
| DateTimeMod | Both | Date and time the document was modified (MM//DD/YYYY HH:MM) |
| DateTimeReceived | Email | Date and time email was received (MM//DD/YYYY HH:MM) |
| To | Email | The name and email address of all recipient(s) of the email that were included on the "To" line of the email |
| From | Email | The name and email address of the sender of the email |
| CC | Email | The name and email address of all recipients of the email that were included on the "CC" line of the email |
| BCC | Email | The name and email address of all recipients that were included on the "BCC" line of the email |
| AttachmentCount | Both | Number of attached documents |
| Attach | Both | The file name(s) of the attached documents |
| DateTimeCreated | Edoc | Date and time the document was created (MM/DD/YYYY HH:MM) |
| FileName | Both | File name of the edoc or email |
| FileSize | Both | Size of the file |
| Title | Edoc | Any value populated in the Title field of the document properties |
| Subject | Edoc | Any value populated in the Subject field of the document properties |
| Author | Edoc | Any value populated in the Author field of the document properties |
| DocExt | Both | File extension of the document |
| RecordType | Both | Designates whether the record is an Email, Attachment, Edoc, or another record type |
| NativeFile | Both | Native file link |
| Text | Both | Text file link |
| Confidentiality | Both | Indicates the confidentiality of the record |
| Redaction | Both | Indicates whether redactions have been applied to the document |
| MD5Hash | Both | Document MD5 hash value (used for deduplication or other processing). |